******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

GLENN GILMAN *v.* BRIAN SHAMES ET AL.
(AC 41412)

Sheldon, Moll and Seeley, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court
dismissing his action against the defendants, the state of Connecticut
and S, a physician who had provided medical care and treatment to the
decedent, who was the plaintiff's fiancée and domestic partner. The
plaintiff's operative complaint raised claims sounding in bystander emo-
tional distress directed to each of the defendants. The plaintiff alleged,
inter alia, that S had administered ineffective treatments to the decedent
for approximately eight months and that, notwithstanding the lack of
improvement in her condition, S had failed to alter the course of the
treatments or to take further diagnostic action as was consistent with
standard practice, which constituted a substantial factor in the dece-
dent's death. The plaintiff additionally alleged that he had been harmed
by S' conduct and by the state's breach of its duty to the decedent to
ensure that the state's agents, servants or employees acted as reasonably
prudent medical professionals. The trial court granted the defendants'
motion to dismiss for lack of subject matter jurisdiction, and the plaintiff
appealed to this court. On appeal, he claimed, inter alia, that the trial
court erroneously concluded that his bystander emotional distress claim
directed to S in S' individual capacity was barred by statutory (§ 4-165)
immunity. Specifically, he claimed that the facts pleaded in his operative
complaint were sufficient to demonstrate that S' conduct was reckless
and, thus, that S was not protected by statutory immunity under § 4-
165. *Held*:

1. The trial court properly dismissed the plaintiff's claim directed to S in S'
individual capacity on the basis of statutory immunity pursuant to § 4-
165, as the plaintiff failed to allege facts demonstrating that S acted in
a reckless manner; S' conduct in treating the decedent over the course
of approximately eight months, during which S allegedly continued to
administer ineffective treatment to the decedent and failed to alter the
course of treatments or to take further diagnostic action as was consis-
tent with standard practice, even though the plaintiff and the decedent
expressed to S that the treatments were not working, did not demon-
strate that S acted in a reckless manner, as it did not tend to take
on the aspect of highly unreasonable conduct, involving an extreme
departure from ordinary care, in a situation where a high degree of
danger was apparent, and the plaintiff's conclusory use of the terms
"reckless" and "recklessly" in describing S' conduct was not sufficient
to establish that S' actions were reckless.

2. The plaintiff could not prevail on his claim that the trial court erroneously
concluded that it lacked subject matter jurisdiction over his bystander
emotional distress claim directed to the state; that court properly deter-
mined that the plaintiff's bystander emotional distress claim, which was
derivative in nature, was not viable in the absence of a predicate wrongful
death action commenced by the decedent's estate, and the plaintiff's
claim that the trial court erred in dismissing his bystander emotional
distress claim directed to the state on the ground that his failure to join
the decedent's estate in the present action deprived the court of subject
matter jurisdiction misconstrued the decision of the court, which did
not determine that the decedent's estate was an indispensable party
but, instead, properly concluded that it could not reach the merits of the
plaintiff's derivative claim because it had not been joined to a predicate
wrongful death action brought by the decedent's estate.

Argued February 5—officially released May 7, 2019

*Procedural History*

Action to recover damages for bystander emotional
distress, and for other relief, brought to the Superior
Court in the judicial district of New Britain, where the

court, *Morgan, J.*, granted the plaintiff's motion to substitute the state of Connecticut as a party defendant; thereafter, the plaintiff filed an amended complaint; subsequently, the court granted the motion to dismiss filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Glenn Gilman*, self-represented, the appellant (plaintiff).

*Michael G. Rigg*, for the appellees (defendants).

*Opinion*

MOLL, J. The plaintiff, Glenn Gilman, appeals from the judgment of the trial court dismissing his action against the defendants Brian Shames, M.D., and the state of Connecticut (state).[1] On appeal, the plaintiff claims that the court erred in concluding that it lacked subject matter jurisdiction over his bystander emotional distress claims on the grounds that (1) his claim against Shames, to the extent that the plaintiff was suing Shames in his individual capacity, was barred by statutory immunity pursuant to General Statutes § 4-165, and (2) his claim against the state was derivative of a wrongful death action that had not been brought and, as a result of the expiration of the limitations period set forth in General Statutes § 52-555, could not be brought by the estate of the decedent, Lisa Wenig. We affirm the judgment of the trial court.

The following procedural history and facts, as alleged in the plaintiff's operative complaint or as undisputed in the record, are relevant to our resolution of the appeal. From about December 15, 2014 through August 19, 2015, Shames—who was at all relevant times a physician employed by the University of Connecticut Health Center, of which the John Dempsey Hospital (hospital) is a part[2]—provided medical care and treatment to the decedent, who was the plaintiff's fiancée and domestic partner. The decedent died on October 1, 2015.

In June, 2016, pursuant to General Statutes § 4-147,[3] the plaintiff filed a notice of claim with the Office of the Claims Commissioner seeking permission to sue the state for damages on the basis of injuries he claimed to have suffered, including emotional distress and loss of consortium, stemming from medical malpractice allegedly committed against the decedent by Shames and the hospital. By way of a memorandum of decision dated February 23, 2017, the Claims Commissioner, absent objection, authorized the plaintiff to sue the state for damages of up to $500,000 for alleged medical malpractice by general surgeons or other similar health care providers who constitute state officers and employees, as defined by General Statutes (Rev. to 2015) § 4-141, of the hospital.

On June 26, 2017, the plaintiff, representing himself, commenced the present action against Shames and the hospital. In his original two count complaint, the plaintiff raised claims sounding in bystander emotional distress directed to Shames and the hospital.

On August 25, 2017, Shames and the hospital filed a motion to dismiss the action, which was accompanied by a separate memorandum of law, asserting that the court lacked subject matter jurisdiction over the plaintiff's bystander emotional distress claims. Specifically, they asserted that the plaintiff's claim directed to Shames was barred by sovereign immunity and/or by

statutory immunity pursuant to § 4-165, and that the plaintiff could not pursue a bystander emotional distress action in the absence of a wrongful death action commenced by the decedent's estate, which had not brought a wrongful death action or received authorization from the Claims Commissioner to commence such an action. In addition, Shames and the hospital argued that the plaintiff improperly had brought suit against the hospital because the plaintiff had received authorization from the Claims Commissioner to sue the state only. On October 11, 2017, the plaintiff filed a motion to substitute the state as a party defendant in lieu of the hospital, which the trial court granted on October 24, 2017. On October 23, 2017, the plaintiff filed an objection and a separate memorandum of law in opposition to the motion to dismiss. On November 6, 2017, the defendants filed a reply brief,[4] in which they argued additionally that the decedent's estate would be time barred from bringing a wrongful death action as a result of the expiration of the subject matter jurisdictional limitations period set forth in § 52-555.[5]

On November 13, 2017, the plaintiff filed his operative two count complaint raising claims sounding in bystander emotional distress directed to each of the defendants. He alleged, inter alia, that Shames had administered ineffective treatments to the decedent for approximately eight months and that, notwithstanding the lack of improvement in her condition, Shames had failed to alter the course of the treatments or to take "further diagnostic action as is consistent with standard practice," which constituted a substantial factor in the decedent's death. The plaintiff additionally alleged that he had been harmed by Shames' conduct and by the state's breach of its duty to the decedent to ensure that the state's agents, servants, and/or employees acted as "reasonably prudent medical professionals." More particularly, the plaintiff alleged that he had sustained injuries stemming from his "contemporary sensory perception of observing and/or experiencing the demise of the decedent, the decedent's suffering, the decedent's health deteriorating, the decedent's pain and suffering, the administration of life support and, ultimately, [the decedent's] death . . . ."

On December 4, 2017, the court heard argument on the defendants' motion to dismiss. On February 9, 2018, the court granted the motion to dismiss. With respect to the plaintiff's bystander emotional distress claim directed to Shames, the court concluded that (1) to the extent that the plaintiff was suing Shames in Shames' official capacity as an employee of the hospital, which was an agent of the state, the plaintiff's claim was barred by sovereign immunity, and (2) to the extent that the plaintiff was suing Shames in Shames' individual capacity, the plaintiff's claim was barred by statutory immunity pursuant to § 4-165. In addition, without limiting its analysis to the plaintiff's claim against the state, the

court concluded that the plaintiff's bystander emotional distress "claims" were derivative claims that were not viable absent a predicate wrongful death action commenced by the decedent's estate, which had not commenced such an action and, as a result of the expiration of the limitations period set forth in § 52-555, could not commence such an action. This appeal followed.

"The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Dubinsky* v. *Reich*, 187 Conn. App. 255, 259, 201 A.3d 1153 (2019).

On appeal, the plaintiff claims that the court erred in concluding that it lacked subject matter jurisdiction to entertain his bystander emotional distress claims. Specifically, the plaintiff asserts that (1) his claim directed to Shames in Shames' individual capacity was not barred by statutory immunity pursuant to § 4-165,[6] and (2) the absence of a wrongful death action brought by the decedent's estate did not deprive the court of subject matter jurisdiction over his claim against the state. These claims are unavailing.

I

The plaintiff first claims that the court erroneously concluded that his bystander emotional distress claim directed to Shames in Shames' individual capacity was barred by statutory immunity pursuant to § 4-165. Specifically, he asserts that the facts pleaded in his operative complaint were sufficient to demonstrate that Shames' conduct was reckless and, thus, that Shames was not protected by statutory immunity under § 4-165. We disagree.

Section 4-165 (a) provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." "In other words, state employees may not be held per-

sonally liable for their negligent actions performed within the scope of their employment. . . . State employees do not, however, have statutory immunity for wanton, reckless or malicious actions, or for actions not performed within the scope of their employment. For those actions, they may be held personally liable, and a plaintiff who has been injured by such actions is free to bring an action against the individual employee. . . .

"In the posture of this case, we examine the pleadings to decide if the plaintiff has alleged sufficient facts . . . with respect to personal immunity under § 4-165, to support a conclusion that the [defendant was] acting outside the scope of [his] employment or wilfully or maliciously. . . . The question before us, therefore, is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive a motion to dismiss on the ground of statutory immunity. . . .

"We thus turn to the matter of whether the plaintiff has alleged facts that, if proven, are sufficient to demonstrate that the defendant acted wantonly, recklessly, or maliciously. In applying § 4-165, our Supreme Court has understood wanton, reckless or malicious to have the same meaning as it does in the common-law context. . . . Under the common law, [i]n order to establish that the [defendant's] conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the [defendant], the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citations omitted; internal quotation marks omitted.) *Lawrence* v. *Weiner*, 154 Conn. App. 592, 597–98, 106 A.3d 963, cert. denied, 315 Conn. 925, 109 A.3d 921 (2015). "Claims involving . . . statutory immunity, pursuant to § 4-165, implicate the court's subject matter jurisdiction." (Internal quotation marks omitted.) Id., 597.

In his operative complaint, the plaintiff alleged in relevant part that: Shames treated the decedent from on or about December 15, 2014 through August 19, 2015; Shames' treatments, which included the administration of intravenous fluids to the decedent to fight an infection, did not improve her condition; and despite the lack of improvement in the decedent's condition, as

well as the plaintiff and the decedent expressing to Shames that the treatments were not working, Shames continued to administer the ineffective treatments for approximately eight months and "failed grossly negligently and/or recklessly" to alter the course of treatments or to take "further diagnostic action as is consistent with standard practice." In paragraph thirty-seven of his operative complaint, the plaintiff alleged: "[Shames'] continuous and repeated grossly negligent treatment of [the decedent], cumulatively over the course of almost eight (8) months, constitute[d] a conscious disregard for the substantial likelihood of misdiagnosis and concomitantly of injury arising therefrom, and [was] thereby reckless." In its decision granting the defendants' motion to dismiss, the court determined that because the plaintiff's operative complaint, construed in the light most favorable to the plaintiff, failed to allege facts establishing that Shames' conduct "rose to the level of egregiousness necessary to be considered wanton, reckless, or malicious," Shames, in his individual capacity, was immune from suit pursuant to § 4-165.

We agree with the court that the plaintiff failed to allege facts demonstrating that Shames acted in a reckless manner. Shames' conduct in treating the decedent over the course of approximately eight months, as pleaded by the plaintiff in his operative complaint, did not "[tend] to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Lawrence* v. *Weiner*, supra, 154 Conn. App. 598. In addition, the plaintiff's conclusory use of the terms "reckless" and "recklessly" in describing Shames' conduct was not sufficient to establish that Shames' actions were reckless. See, e.g., *Dumond* v. *Denehy*, 145 Conn. 88, 91, 139 A.2d 58 (1958) ("Simply using the word 'reckless' or 'recklessness' is not enough. A specific allegation setting out the conduct that is claimed to be reckless or wanton must be made."). Thus, the court properly dismissed the plaintiff's claim directed to Shames in Shames' individual capacity on the basis of statutory immunity pursuant to § 4-165.

II

The plaintiff next claims that the court erroneously concluded that it lacked subject matter jurisdiction over his bystander emotional distress claim directed to the state on the basis that, as a derivative claim, his claim could not be raised in the absence of a predicate wrongful death action commenced by the decedent's estate. Specifically, he asserts that (1) his claim against the state was viable as a freestanding claim and was not dependent on the existence of a predicate wrongful death action commenced by the decedent's estate, and (2) the court's dismissal of his claim was improper because his failure to join the decedent's estate in the

present action did not implicate the court's subject matter jurisdiction.[7] We are not persuaded.

### A

We first turn to the plaintiff's contention that his bystander emotional distress claim against the state was not dependent on the existence of a wrongful death action brought by the decedent's estate but, rather, was viable as a freestanding claim. The defendants argue that the plaintiff's bystander emotional distress claim against the state was a derivative claim that could not be brought in the absence of a predicate wrongful death action commenced by the decedent's estate. We agree with the defendants.

In its decision granting the defendants' motion to dismiss, after concluding that the plaintiff's bystander emotional distress claim directed to Shames was barred by sovereign immunity and by statutory immunity, the court stated: "Turning to [the plaintiff's] bystander emotional distress claims, the defendants argue that the court lacks subject matter jurisdiction over these claims because they are derivative of the wrongful death [action] that was not brought, and due to the expiration of the statute of limitations established by [§ 52-555], now cannot be brought on behalf of [the decedent's] estate. The court agrees with the defendants. Like a loss of consortium claim, a claim for bystander emotional distress is a derivat[ive] claim. *Squeo* v. *Norwalk Hospital Assn.*, 316 Conn. 558, 564, [113 A.3d 932] (2015). Consequently, it cannot be brought as a freestanding claim where there is no valid underlying predicate action. See *Jacoby* v. *Brinckerhoff*, 250 Conn. 86, [88–95], [735 A.2d 347] (1999) (husband cannot maintain derivative action of loss of consortium where his wife failed to sue defendant [psychiatrist] for malpractice); see also *Voris* v. *Molinaro*, 302 Conn. 791, 798–801, [31 A.3d 363] (2011) (holding that settlement of predicate injury claim extinguishes derivative loss of consortium claim). Neither *Squeo* v. *Norwalk Hospital Assn.*, supra, 558, nor any other Connecticut appellate authority holds otherwise. [The plaintiff's] failure to join his derivat[ive] bystander emotional distress action with a valid action brought on behalf of [the decedent's] estate is fatal to his claim. Absent a valid underlying predicate action brought on behalf of [the decedent's] estate, the court does not have subject matter jurisdiction to adjudicate [the plaintiff's] bystander emotional distress claim."[8]

We observe that "[b]ystander emotional distress is a derivative claim, pursuant to which a bystander who witnesses another person . . . suffer injury or death as a result of the negligence of a third party seeks to recover from that third party for the emotional distress that the bystander suffers as a result." *Squeo* v. *Norwalk Hospital Assn.*, supra, 316 Conn. 564. "[B]ystander emotional distress derives from bodily injury to another

. . . . [B]ecause emotional distress, by itself, is not a bodily injury, it can be compensable only if it flows from the bodily injury of another person. . . . This is because but for the bodily injury to [another], the plaintiff would not . . . [suffer] any emotional injuries. In other words, the plaintiff's injuries are the natural and probable consequence of . . . having witnessed the accident . . . . Therefore, the measure of the plaintiff's recovery is not governed by the fact that his separate damages arose out of the same accident, but by the fact that they *arose out of* the same bodily injury . . . . Given the but-for relationship between the underlying injury and the derivative injury of bystander emotional distress, the bystander's emotional distress is causally connected to the underlying injury. Bystander emotional distress, therefore, by its very nature, results from and arises out of the underlying personal injury or death." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Velecela* v. *All Habitat Services, LLC*, 322 Conn. 335, 340–41, 141 A.3d 778 (2016).

The parties have not cited any appellate authority, and we are aware of none, specifically addressing whether a bystander emotional distress claim may be pursued without being joined to a predicate claim asserted by the injured principal. Our Supreme Court's decision in *Jacoby* v. *Brinckerhoff*, supra, 250 Conn. 86, which analyzed the viability of a plaintiff's loss of consortium claim in the absence of a predicate action commenced by the plaintiff's former spouse, is instructive, however. In *Jacoby*, the plaintiff brought an action against the defendant, a psychiatrist, asserting, inter alia, a loss of consortium claim on the basis of allegations that the defendant's treatment of the plaintiff's former spouse constituted a failure to render proper care.[9] Id., 88. The plaintiff's former spouse did not commence an action against the defendant, and she refused to join the plaintiff's action. Id., 88–90. The trial court, in granting a motion to strike filed by the defendant, struck all counts in the plaintiff's operative complaint and subsequently rendered judgment in accordance with its ruling thereon. Id., 89. The plaintiff appealed from that judgment to this court, and our Supreme Court transferred the appeal to itself. Id., 89 n.3.

On appeal in *Jacoby*, the plaintiff argued in relevant part that he was entitled to pursue his loss of consortium claim without joining it to a predicate claim brought by his former wife because the former wife's refusal to participate in his action rendered such joinder impossible. Id., 89–90. Our Supreme Court rejected that argument. Observing that in a prior case it had stated, in dictum, that a loss of consortium claim would be barred when the injured spouse's action had been terminated by settlement or by an adverse judgment on the merits, the court determined that it could "discern no viable distinction between precluding a consortium

claim when the injured spouse has settled with the alleged tortfeasor and precluding it when the injured spouse, as in this case, has declined altogether to sue the alleged tortfeasor. [Our Supreme Court's] statement reflects the premise, which the plaintiff does not challenge, that an action for loss of consortium, although independent in form, is derivative of the injured spouse's cause of action . . . . Although the noninjured spouse has a right to choose whether to bring or to forgo a derivative consortium claim . . . there is logical appeal to linking that right to an existing viable claim by the injured spouse." (Citations omitted; internal quotation marks omitted.) Id., 91–92.

Without deciding whether the failure to join a predicate claim by an injured spouse with a derivative loss of consortium claim would be excusable under certain circumstances, the court concluded that the plaintiff's failure to join his loss of consortium claim with a predicate action brought by his former spouse was fatal. The court stated: "It is inherent in the nature of a derivative claim that the scope of the claim is defined by the injury done to the principal. The party pursuing a derivative cause of action may have a claim for special damages arising out of that injury, but he may not redefine the nature of the underlying injury itself. In the ordinary physical injury case, a person pursuing a derivative claim may be unable to proceed if the injured spouse's rights were compromised by that spouse's comparative responsibility for the injury. . . . It follows that, in the case of medical malpractice, a person pursuing a derivative claim may be barred from bringing suit if the injured spouse gave informed consent to the professional procedure that caused the patient's condition to change." (Citations omitted.) Id., 93–94. The court proceeded to note that the record did not disclose why the plaintiff's former spouse had declined to sue the defendant and surmised that the former spouse, inter alia, may not have believed that the defendant's treatment had injured her. Id., 94. The court stated: "We are not prepared to hold that a derivative cause of action may proceed upon the mere possibility that the plaintiff's spouse may have sustained an injury that resulted from negligent or intentional misconduct on the part of a psychiatrist. . . . A derivative cause of action for loss of consortium does not confer surrogate authority on the noninjured spouse to pursue a claim that does not yet exist. We conclude, therefore, that the plaintiff cannot pursue an action for loss of consortium in the absence of any basis in the record for a finding that his former spouse was injured as a result of her treatment by the defendant." (Citation omitted.) Id., 94–95.

Our Supreme Court's rationale in *Jacoby* guides our analysis. Here, the plaintiff's bystander emotional distress claim against the state, which was derivative in nature; *Squeo* v. *Norwalk Hospital Assn.*, supra, 316 Conn. 564; was not brought in conjunction with a wrong-

ful death action commenced by the decedent's estate. The record is devoid of any explanation as to why the decedent's estate has not brought a wrongful death action. Relying on our Supreme Court's rationale in *Jacoby*, we conclude that the plaintiff's derivative bystander emotional distress claim against the state is not viable in the absence of a predicate wrongful death action brought by the decedent's estate. See *Jacoby* v. *Brinckerhoff*, supra, 250 Conn. 94–95; see also *Voris* v. *Molinaro*, supra, 302 Conn. 797–801 (concluding that trial court properly granted defendant's motion to strike plaintiff's loss of consortium claim on ground that predicate negligence claim brought by plaintiff's spouse had been settled); *Musorofiti* v. *Vlcek*, 65 Conn. App. 365, 375, 783 A.2d 36 ("a derivative cause of action . . . is dependent on the legal existence of [a] predicate action"), cert. denied, 258 Conn. 938, 786 A.2d 426 (2001). Accordingly, the court correctly concluded that the plaintiff's bystander emotional distress claim directed to the state failed in the absence of a wrongful death action commenced by the decedent's estate.[10]

B

The plaintiff also contends that the court erred in dismissing his bystander emotional distress claim directed to the state on the basis that his failure to join the decedent's estate in the present action deprived the court of subject matter jurisdiction. Specifically, he asserts that the nonjoinder of a party does not implicate a court's subject matter jurisdiction and, thus, the court erred in dismissing his claim. See *General Linen Service Co.* v. *Cedar Park Inn & Whirlpool Suites*, 179 Conn. App. 527, 532, 180 A.3d 966 (2018) ("It is well settled that the failure to join an indispensable party does not deprive a trial court of subject matter jurisdiction. See General Statutes § 52-108 and Practice Book §§ 9-18, 9-19 and 11-3 . . . . [T]he failure to join an indispensable party results in a jurisdictional defect *only if* a statute mandates the naming and serving of [a particular] party." [Citations omitted; emphasis in original; internal quotation marks omitted.]). The plaintiff misconstrues the court's decision. The court did not determine that the decedent's estate was an indispensable party,[11] whose interests would be affected substantively by its adjudication of the plaintiff's bystander emotional distress claim and whose participation in the present case would, therefore, be necessary. Instead, the court properly concluded that it could not reach the merits of the plaintiff's derivative claim because it had not been joined to a predicate wrongful death action brought by the decedent's estate. Accordingly, we reject the plaintiff's argument.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] For purposes of clarity, we refer to Shames and the state collectively as the defendants and individually by name.

[2] See General Statutes § 10a-251 ("[i]t is hereby found and determined that the John Dempsey Hospital of The University of Connecticut Health Center is a vital resource of The University of Connecticut and the state").

[3] General Statutes § 4-147 provides in relevant part: "Any person wishing to present a claim against the state shall file with the Office of the Claims Commissioner a notice of claim, in duplicate, containing the following information: (1) The name and address of the claimant; the name and address of his principal, if the claimant is acting in a representative capacity, and the name and address of his attorney, if the claimant is so represented; (2) a concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of; (3) a statement of the amount requested; and (4) a request for permission to sue the state, if such permission is sought. . . ."

Relatedly, General Statutes § 4-160 provides in relevant part: "(a) Whenever the Claims Commissioner deems it just and equitable, the Claims Commissioner may authorize suit against the state on any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable.

"(b) In any claim alleging malpractice against the state, a state hospital or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Office of the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim. . . ."

[4] On November 29, 2017, the plaintiff filed a request to file a proposed surreply, which was attached thereto. The court granted the request on February 9, 2018, at which time the surreply was deemed filed.

[5] General Statutes § 52-555 provides: "(a) In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of.

"(b) Notwithstanding the provisions of subsection (a) of this section, an action may be brought under this section at any time after the date of the act or omission complained of if the party legally at fault for such injuries resulting in death has been convicted or found not guilty by reason of mental disease or defect of a violation of section 53a-54a, 53a-54b, 53a-54c, 53a-54d, 53a-55 or 53a-55a with respect to such death."

[6] On appeal, the plaintiff does not challenge the court's ruling that his claim directed to Shames in Shames' official capacity as an employee of the hospital was barred by sovereign immunity.

[7] The plaintiff also asserts that the court implicitly ruled that his bystander emotional distress claim was barred by the doctrine of res judicata on the basis that the decedent's estate had not commenced a predicate wrongful death action. He contends that the court's implicit ruling was erroneous because no judgment has been rendered that would bar his bystander emotional distress claim. This claim is without merit, as the court's ruling contains no language to suggest that it was based on res judicata principles.

[8] In their respective appellate briefs, the parties interpret the court's decision as dismissing the plaintiff's bystander emotional distress claim directed to Shames solely on the basis of sovereign immunity and statutory immunity, and dismissing the plaintiff's bystander emotional distress claim directed to the state on the ground that his claim was not viable in the absence of a wrongful death action brought by the decedent's estate. We can think of no reason why the absence of a predicate wrongful death action brought by the decedent's estate could not serve as an independent ground upon which the plaintiff's claim directed to Shames could have been dismissed. Nevertheless, because neither party argues that the court dismissed the claim against Shames on that ground, we do not opine on this issue further.

[9] The plaintiff named a second defendant in the action, but he later withdrew his claims against that defendant. *Jacoby* v. *Brinckerhoff*, supra, 250 Conn. 88 n.1.

[10] We note that in *Jacoby* v. *Brinckerhoff*, supra, 250 Conn. 89, the trial court granted a motion to strike the plaintiff's loss of consortium claim and rendered judgment thereon, and our Supreme Court affirmed the trial court's

judgment. See also *Voris* v. *Molinaro*, supra, 302 Conn. 797–801 (affirming judgment rendered upon trial court's granting of defendant's motion to strike loss of consortium claim on ground that predicate negligence claim brought by plaintiff's spouse had been settled). The plaintiff does not raise a claim on appeal contesting the defendants' use of a motion to dismiss as opposed to a motion to strike, and we decline to address at this time whether a motion to dismiss is the proper vehicle to challenge a derivative claim based on the absence of a predicate claim that would fail on subject matter jurisdictional grounds. We observe, however, that this court and our Supreme Court have affirmed judgments granting motions to dismiss when, notwithstanding that the motions to dismiss were procedurally improper, the claims at issue were otherwise subject to motions to strike and the deficiencies in the plaintiffs' complaints could not be cured. See, e.g., *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 501–502, 815 A.2d 1188 (2003) (affirming, in part, judgment of dismissal when trial court's granting of motion to dismiss, instead of motion to strike, as to certain claims, although procedurally improper, constituted harmless error when nothing in record suggested that plaintiff could amend complaint to state viable claim); *McCutcheon & Burr, Inc.* v. *Berman*, 218 Conn. 512, 527–28, 590 A.2d 438 (1991) (same); *Mercer* v. *Rodriquez*, 83 Conn. App. 251, 267–68, 849 A.2d 886 (2004) (relying on holding in *Fort Trumbull Conservancy, LLC*, to affirm judgment of dismissal when trial court's erroneous conclusion that it lacked subject matter jurisdiction over plaintiff's action was harmless).

[11] "Parties are considered indispensable when they not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final [disposition] may be . . . inconsistent with equity and good conscience. . . . Indispensable parties must be joined because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]." (Internal quotation marks omitted.) *Bloom* v. *Miklovich*, 111 Conn. App. 323, 333–34, 958 A.2d 1283 (2008).