******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# GLENN GILMAN ET AL. *v.* BRIAN SHAMES ET AL.
## (AC 44456)

Alvord, Elgo and Cradle, Js.

*Syllabus*

The defendant state of Connecticut appealed from the judgment of the trial court denying its motion to dismiss the plaintiff's action on the ground of sovereign immunity. Pursuant to the applicable statute (§ 4-147), the plaintiff filed a notice of claim with the Office of the Claims Commissioner, seeking permission to sue the defendants, the state and S, a physician employed by the University of Connecticut Health Center, for damages for emotional distress and loss of consortium resulting from the death of his domestic partner, which he claimed was caused by the medical malpractice of S and the hospital that provided her care, which was a part of the University of Connecticut Health Center. The commissioner authorized the plaintiff to sue for damages of up to $500,000 for alleged medical malpractice. The plaintiff commenced an action against the defendants for bystander emotional distress. The defendants filed a motion to dismiss, which the trial court granted, concluding, inter alia, that the plaintiff's claim was barred by sovereign immunity. This court affirmed the trial court's decision, concluding that the plaintiff's derivative claim was not viable because it was not accompanied by a wrongful death action brought by the decedent's estate. The plaintiff commenced the present action against the defendants, alleging wrongful death in his capacity as administrator of the decedent's estate and bystander emotional distress in his individual capacity. The defendants filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the commissioner had not granted the plaintiff permission to bring a claim on behalf of the decedent's estate and that the wrongful death action was barred by the applicable statute of limitations (§ 52-555). The plaintiff withdrew its claims against S and, thereafter, the trial court denied the motion to dismiss, determining that the plaintiff's notice was sufficient and that the commissioner's waiver of sovereign immunity validly encompassed the claims. On the defendant state's appeal to this court, *held*:

1. The trial court improperly denied the defendants' motion to dismiss: the plaintiff's notice of claim that was filed with the commissioner indicated only that he sought to bring a claim against the defendants in his capacity as an individual and did not properly apprise the commissioner of the plaintiff's intention to sue the state in an administrative capacity; moreover, contrary to the plaintiff's assertion, his notice of claim was not analogous to that provided to the commissioner in *Arroyo* v. *University of Connecticut Health Center* (175 Conn. App. 493), which set forth the same claim that was argued at trial merely in a slightly different fashion, because, in the present case, the plaintiff's wrongful death action brought as administrator of the decedent's estate and his derivative bystander emotional distress action brought in his individual capacity were two wholly separate claims; accordingly, the commissioner's waiver of sovereign immunity could not be said to encompass the wrongful death claim at issue in the appeal, and the trial court did not have subject matter jurisdiction over the plaintiff's claims.

2. The accidental failure of suit statute (§ 52-592) did not save the plaintiff's action from his lack of compliance with the statute of limitations for wrongful death actions: the trial court's reliance on *Isaac* v. *Mount Sinai Hospital* (210 Conn. 721) in determining that § 52-592 applied to the present action was misplaced, as, in *Isaac*, our Supreme Court liberally construed § 52-592 to find that the statute saved the plaintiff's second wrongful death action because the cause of action, claimed factual background and defendants were identical to those of her first action and, in the present case, the plaintiff did not bring the same claim in two consecutive actions; moreover, at the time of his first action, the plaintiff did not meet the statutory requirement to bring a claim on behalf of the decedent's estate because he did not become the administrator of the estate until after the first action was dismissed and at no point

during the pendency of the first action did he hold himself out to be the administrator of the estate; accordingly, the plaintiff's wrongful death action did not overlap with his individual claim in his first action in a manner that would implicate § 52-592, and the judgment of the trial court was reversed and the case was remanded with direction to render a judgment of dismissal.

Argued December 7, 2021—officially released April 26, 2022

*Procedural History*

Action to recover damages for, inter alia, the allegedly wrongful death of the plaintiff administrator's decedent as a result of the defendants' negligence, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Frechette, J.*, denied the defendants' motion to dismiss; thereafter, the plaintiffs withdrew their complaint with respect to the named defendant, and the defendant state of Connecticut appealed to this court. *Reversed; judgment directed.*

*Michael G. Rigg*, with whom, on the brief, was *Robert D. Silva*, for the appellant (defendant state of Connecticut).

*Harris Appelman*, for the appellees (plaintiffs).

*Opinion*

ELGO, J. The defendant state of Connecticut[1] appeals from the judgment of the trial court denying its motion to dismiss the action of the plaintiff Glenn Gilman[2] on the ground of sovereign immunity. On appeal, the defendant claims that the court improperly determined that (1) the Claims Commissioner (commissioner) had waived sovereign immunity with respect to the plaintiff's claims, and (2) the accidental failure of suit statute, General Statutes § 52-592,[3] exempted the plaintiff from the two year time limit for bringing a wrongful death action under General Statutes § 52-555.[4] We reverse the judgment of the trial court.

The following facts, as found by this court in *Gilman* v. *Shames*, 189 Conn. App. 736, 208 A.3d 1279 (2019), are relevant to this appeal. "From about December 15, 2014, through August 19, 2015, Shames—who was at all relevant times a physician employed by the University of Connecticut Health Center, of which the John Dempsey Hospital (hospital) is a part—provided medical care and treatment to the decedent, who was the plaintiff's fiancée and domestic partner. The decedent died on October 1, 2015.

"In June, 2016, pursuant to General Statutes § 4-147, the plaintiff filed a notice of claim with the Office of the Claims Commissioner seeking permission to sue the [defendant] for damages on the basis of injuries he claimed to have suffered, including emotional distress and loss of consortium, stemming from medical malpractice allegedly committed against the decedent by Shames and the hospital. By way of a memorandum of decision dated February 23, 2017, the [commissioner], absent objection, authorized the plaintiff to sue the [defendant] for damages of up to $500,000 for alleged medical malpractice by general surgeons or other similar health care providers who constitute state officers and employees, as defined by General Statutes (Rev. to 2015) § 4-141, of the hospital.

"On June 26, 2017, the plaintiff, representing himself, commenced the [first] action against Shames and the hospital. In his original two count complaint, the plaintiff raised claims sounding in bystander emotional distress directed to Shames and the hospital.

"On August 25, 2017, Shames and the hospital filed a motion to dismiss the action, which was accompanied by a separate memorandum of law, asserting that the court lacked subject matter jurisdiction over the plaintiff's bystander emotional distress claims. Specifically, they asserted that the plaintiff's claim directed to Shames was barred by sovereign immunity and/or by statutory immunity pursuant to [General Statutes] § 4-165, and that the plaintiff could not pursue a bystander emotional distress action in the absence of a wrongful death action commenced by the decedent's estate, which

had not brought a wrongful death action or received authorization from the [commissioner] to commence such an action. In addition, Shames and the hospital argued that the plaintiff improperly had brought suit against the hospital because the plaintiff had received authorization from the [commissioner] to sue the [defendant] only. On October 11, 2017, the plaintiff filed a motion to substitute the [defendant] as a party defendant in lieu of the hospital, which the trial court granted on October 24, 2017. On October 23, 2017, the plaintiff filed an objection and a separate memorandum of law in opposition to the motion to dismiss. On November 6, 2017, the [defendant and Shames] filed a reply brief, in which they argued additionally that the decedent's estate would be time barred from bringing a wrongful death action as a result of the expiration of the subject matter jurisdictional limitations period set forth in § 52-555.

"On November 13, 2017, the plaintiff filed his operative two count complaint raising claims sounding in bystander emotional distress directed to [the defendant and Shames]. He alleged, inter alia, that Shames had administered ineffective treatments to the decedent for approximately eight months and that, notwithstanding the lack of improvement in her condition, Shames had failed to alter the course of the treatments or to take 'further diagnostic action as is consistent with standard practice,' which constituted a substantial factor in the decedent's death. The plaintiff additionally alleged that he had been harmed by Shames' conduct and by the [defendant's] breach of its duty to the decedent to ensure that the [defendant's] agents, servants, and/or employees acted as 'reasonably prudent medical professionals.' More particularly, the plaintiff alleged that he had sustained injuries stemming from his 'contemporary sensory perception of observing and/or experiencing the demise of the decedent, the decedent's suffering, the decedent's health deteriorating, the decedent's pain and suffering, the administration of life support and, ultimately, [the decedent's] death . . . .'

"On December 4, 2017, the court heard argument on the [defendant's and Shames'] motion to dismiss. On February 9, 2018, the court granted the motion to dismiss. With respect to the plaintiff's bystander emotional distress claim directed to Shames, the court concluded that (1) to the extent that the plaintiff was suing Shames in Shames' official capacity as an employee of the hospital, which was an agent of the [defendant], the plaintiff's claim was barred by sovereign immunity, and (2) to the extent that the plaintiff was suing Shames in Shames' individual capacity, the plaintiff's claim was barred by statutory immunity pursuant to § 4-165. In addition, without limiting its analysis to the plaintiff's claim against the [defendant], the court concluded that the plaintiff's bystander emotional distress 'claims' were derivative claims that were not viable absent a predicate

wrongful death action commenced by the decedent's estate, which had not commenced such an action and, as a result of the expiration of the limitations period set forth in § 52-555, could not commence such an action." (Footnotes omitted.) Id., 738–42.

The plaintiff then appealed to this court, which affirmed the trial court's decision. Id., 754. In doing so, this court concluded that the plaintiff's claim for bystander emotional distress was a " 'derivative claim' " that " 'can be compensable only if it flows from the bodily injury of another person.' " Id., 748–49. Relying on our Supreme Court's decision in *Jacoby* v. *Brinkerhoff*, 250 Conn. 86, 735 A.2d 347 (1999), which established that "[a] plaintiff's failure to join his [derivative] claim with a predicate action . . . was fatal"; *Gilman* v. *Shames*, supra, 189 Conn. App. 750–51; this court held that the plaintiff's claim was "not viable" because it was not accompanied by a wrongful death action brought by the decedent's estate. Id., 752.

On May 19, 2020, the plaintiff commenced the present action by way of a five count complaint. The first count, brought against the defendant by the plaintiff in his capacity as the administrator of the decedent's estate,[5] sounded in wrongful death.[6] The third count, brought by the plaintiff in his individual capacity, alleged bystander emotional distress as a result of the defendant's negligent oversight of the decedent's care. The fifth count, brought by the plaintiff as the administrator of the decedent's estate, asserted that the defendant's conduct also constituted a breach of contract between the defendant and the decedent.[7]

On June 18, 2020, the defendant and Shames filed a motion to dismiss for lack of subject matter jurisdiction. They argued, inter alia, that the commissioner had not granted the plaintiff permission to bring his claim on behalf of the decedent's estate, that the wrongful death action was not brought within two years of the decedent's death as mandated by § 52-555, and that the plaintiff's failure to bring the initial action in his capacity as the administrator of the decedent's estate prevented § 52-592 from extending the statute of limitations set forth in § 52-555. The plaintiff filed an opposition to the motion to dismiss accompanied by a memorandum of law on November 3, 2020, in which he argued that a "nontechnical interpretation" of the plaintiff's notice of claim was proper and that the accidental failure of suit statute applied regardless of his status with respect to the decedent's estate at the time of the initial action.

On December 16, 2020, the court issued its memorandum of decision on the defendant's motion to dismiss. Noting that both of the plaintiff's actions were centered on alleged medical malpractice on the part of the defendant's agents, the court broadly construed the plaintiff's notice of claim and concluded that, however "inartfully drawn," (1) the notice properly apprised the commis-

sioner of the plaintiff's intention to bring a wrongful death claim on behalf of the decedent's estate and (2) the waiver of sovereign immunity by the commissioner validly encompassed that claim. With respect to the accidental failure of suit statute, the court emphasized that § 52-592 " 'is remedial and is to be liberally interpreted.' " The court then analogized the present matter to *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 732–33, 557 A.2d 116 (1989), wherein our Supreme Court held that if a sufficient "identity of interest" exists between the parties bringing two actions, "total identity of plaintiffs is not a prerequisite to application of [§ 52-592]." The court reasoned that, because the plaintiff—like the plaintiff in *Isaac*—was not the administrator at the time of his first action but was appointed prior to bringing the present action, § 52-592 should apply in the present case. The court thus denied the defendant's motion to dismiss, and this appeal followed.

I

The defendant first claims that the court improperly determined that it had subject matter jurisdiction over the plaintiff's action. The defendant argues that the court misconstrued the commissioner's prior waiver of sovereign immunity to permit the plaintiff to proceed with his claims in the present action. We agree with the defendant.

We begin our analysis with the relevant standard of review and legal principles. "The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . Therefore, [o]ur Supreme Court expressly has stated that a plaintiff seeking monetary damages against the state must first obtain authorization from the [commissioner]. . . . [Section] 4-147 provides in relevant part: Any person wishing to present a claim against the state shall file with the office of the [commissioner] a notice of claim . . . containing the following information: (1) *The name and address of the claimant*; the name and address of his principal, *if the claimant is acting in a representative capacity*, and the name and address of his attorney, if the claimant is so represented; (2) *a concise statement of the basis of the claim*, including the date, time, place and circumstances of the act or event complained of; (3) a statement of the amount requested; and (4) a request for permission to sue the state, if such permission is sought. . . . [T]he [commissioner] may deny or dismiss the claim, order immediate payment of a claim not exceeding [$7500], recommend to the General Assembly payment of a claim exceeding [$7500] or grant permission to sue the state. . . . As a general matter, [s]overeign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise [plenary] review." (Citations omitted; emphasis added; emphasis in original; internal quotation marks omitted.)

*Arroyo* v. *University of Connecticut Health Center*, 175 Conn. App. 493, 501–502, 167 A.3d 1112, cert. denied, 327 Conn. 973, 174 A.3d 192 (2017).

"The doctrine of sovereign immunity is a rule of common law that operates as a strong presumption in favor of the state's immunity from liability or suit. . . . [It is a] well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . [When] there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 387–88, 978 A.2d 49 (2009).

In his notice of claim filed with the commissioner on June 9, 2016, the plaintiff stated in relevant part: "I am making a claim for my pain and suffering and emotional distress that I experienced because of medical malpractice committed by [the hospital and Shames] regarding the treatment and diagnosis of [the decedent]. I am also making a claim for loss of consortium." At no point therein did the plaintiff indicate that he sought to bring a claim against the defendant in any capacity other than as an individual.[8] In light of the plain text of the plaintiff's notice of claim, we cannot agree with the court that the notice properly apprised the commissioner of the plaintiff's intention to sue the defendant in an administrative capacity.

Although the plaintiff argues that the court correctly relied on *Arroyo* in holding that the February 23, 2017 waiver of sovereign immunity encompassed the claims brought in the present action, the situation set forth in *Arroyo* materially differs from that which is before us. In that case, the plaintiff patient and his spouse brought an action against the defendant hospital and the state alleging medical malpractice with respect to a vasectomy performed on him by one of the defendant hospital's doctors. *Arroyo* v. *University of Connecticut Health Center*, supra, 175 Conn. App. 495–96. After the court rendered judgment for the plaintiffs, the defendants appealed, claiming, inter alia, that the plaintiffs had failed to properly obtain a waiver of sovereign immunity. Id., 495. Comparing the evidence introduced at trial to the allegations set forth in the plaintiffs' notice of claim, this court concluded that "the plaintiffs' theory of liability in their notice accurately sums up the theory of liability presented at trial, albeit in a truncated manner . . . ." Id., 506. This court further noted that, although "the basis of the claim in the notice to the commissioner was not as particularized as it might have been," the lack of discovery available to the plaintiffs in advance of filing their notice of claim counseled against "attaching any binding significance" to the initial formulation of their claim set forth in the notice.

Id., 506–507.

Here, we are not faced with the same claim that is merely presented under one legal theory in the notice of claim and argued in a slightly different fashion at trial. See id., 505–506. Moreover, unlike *Arroyo*, the claimants are not the same. The plaintiff's wrongful death action brought as administrator of the decedent's estate and his derivative bystander emotional distress claim brought in his individual capacity are two wholly separate claims. See *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 563–64, 562 A.2d 1100 (1989) ("[T]he plaintiff's claim as administratrix . . . and the plaintiff's individual claim . . . are two separate causes of action. . . . [A]lthough [the plaintiff's individual claim] . . . is 'derivative,' it is still a separate cause of action . . . ." (Citations omitted.)). It follows that, for the court to have had jurisdiction over his wrongful death claim brought on behalf of the decedent's estate, the plaintiff was obligated, pursuant to § 4-147 (2), to provide a concise statement of the basis of that *particular* claim and to identify himself as acting in a representative capacity. See, e.g., *Morneau* v. *State*, 150 Conn. App. 237, 252, 90 A.3d 1003 (plaintiff seeking waiver of sovereign immunity "needed to include information that would clarify the nature of the waiver sought and ensure that the [commissioner], and subsequently the General Assembly . . . would have an understanding of the nature of that waiver"), cert. denied, 312 Conn. 926, 95 A.3d 522 (2014).

In the absence of proper notice to the commissioner, the commissioner's waiver of sovereign immunity cannot be said to encompass the claim at issue in this appeal. In the absence of such a waiver, we conclude that the court did not have subject matter jurisdiction over the plaintiff's claims. For that reason, the court improperly denied the defendant's motion to dismiss.

II

In light of our resolution of the defendant's sovereign immunity claim, we need not address its second claim of error. However, because of the possibility that this issue may arise in the future, we also consider the defendant's claim that the court improperly concluded that the accidental failure of suit statute exempted the plaintiff from the two year time limit for bringing a wrongful death action under § 52-555. The defendant contends that, because the plaintiff's prior action was brought solely in his individual capacity, § 52-592 cannot save his current action. We agree.

" '[T]he question of whether [a] court properly applied § 52-592 presents an issue of law over which our review is plenary.' " *White* v. *Dept. of Children & Families*, 136 Conn. App. 759, 764, 51 A.3d 1116, cert. denied, 307 Conn. 906, 53 A.3d 221 (2012). " '[T]he accidental failure of suit statute can be traced as far back as 1862 . . .

and is a savings statute that is intended to promote the strong policy favoring the adjudication of cases on their merits rather than the disposal of them on the grounds enumerated in § 52-592 (a). . . . We note, however, that this policy is not without limits. If it were, there would be no statutes of limitations. Even the saving[s] statute does not guarantee that all plaintiffs have the opportunity to have their cases decided on the merits. It merely allows them a limited opportunity to correct certain defects in their actions within a certain period of time.' " *Riccio* v. *Bristol Hospital, Inc.*, 341 Conn. 772, 780, 267 A.3d 799 (2022).

In concluding that the accidental failure of suit statute applied in the present case, the court relied entirely on *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 721. That reliance is misplaced. In *Isaac*, the plaintiff brought her first wrongful death action prior to officially being named administratrix of the decedent's estate.[9] Id., 723. At the time the plaintiff formally became the administratrix, the statute of limitations laid out in § 52-555 already had run. Id. The defendant hospital filed a motion to dismiss alleging a lack of subject matter jurisdiction, which the trial court granted, and this court upheld that judgment on appeal. Id., 724. Four years after bringing that initial action, the plaintiff filed a second wrongful death action, which the trial court dismissed. Id. On appeal, our Supreme Court emphasized that § 52-592 " 'is remedial and is to be liberally interpreted.' " Id., 728. The Supreme Court then reasoned that, even though the plaintiff brought her first action in her individual capacity and her second action as administratrix, she maintained an "identity of interest" that allowed her second action to be saved by § 52-592. Id., 732–33. The court stated: "[W]e conclude that total identity of plaintiffs is not a prerequisite to application of the statute. We look, instead, to the essence of the plaintiff's status and the interest she represented. [The plaintiff] was the purported administratrix of [the decedent's] estate in the first instance and the actual administratrix in the second case. The cause of action and the claimed factual background, as well as all defendants, were identical in both instances. Accordingly, application of § 52-592 to this case is not precluded." Id., 733.

Unlike the plaintiff in *Isaac*, the plaintiff in the present case did not bring the same claim in two consecutive actions. In *Gilman*, the plaintiff brought a claim for bystander emotional distress solely as an individual, and this court specifically concluded that the plaintiff had brought no claim for wrongful death in a representative capacity. *Gilman* v. *Shames*, supra, 189 Conn. App. 751–52. The record does not reflect that, at any point during the pendency of *Gilman*, the plaintiff held himself out as the "purported administrat[or]" of the decedent's estate. *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 733. It is undisputed that the plaintiff did not

become the administrator of the decedent's estate until May 23, 2018, at which point the trial court in *Gilman* already had dismissed the action. Accordingly, at the time of the first action, the plaintiff did not meet the statutory requirement to bring a claim on behalf of the decedent's estate. *Ellis* v. *Cohen*, 118 Conn. App. 211, 216, 982 A.2d 1130 (2009) ("§ 52-555 creates a cause of action for wrongful death that is maintainable on behalf of the estate *only by an executor or administrator*" (emphasis added)). Without the ability to have brought an action as administrator in the first instance, we cannot agree that the plaintiff's attempt to litigate his individual claim in *Gilman* properly overlaps with his current wrongful death action such that § 52-592 is implicated. See *White* v. *Dept. of Children & Families*, supra, 136 Conn. App. 766 ("[I]n the present case, the plaintiff is alleging a new cause of action that is separate from the cause of action that was the basis of her [original] complaint. Because the present case involves a new cause of action, the plaintiff may not invoke § 52-592 to save any untimely claims."). We therefore conclude that the accidental failure of suit statute does not apply in the present case to save the plaintiff's action from his lack of compliance with the statute of limitations for wrongful death actions.[10]

The judgment is reversed and the case is remanded with direction to render a judgment of dismissal.

In this opinion the other judges concurred.

[1] The plaintiff also named Brian Shames, a physician, as a defendant in his complaint. On November 9, 2020, the plaintiff filed a withdrawal of his complaint with respect to Shames only. For clarity, we refer to the state of Connecticut as the defendant and Shames by name in this opinion.

[2] Gilman commenced this action both as administrator of the estate of the decedent, Lisa Gail Wenig, and in his individual capacity. We refer to Gilman in both capacities as the plaintiff.

[3] General Statutes § 52-592 provides in relevant part: "(a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment. . . ."

[4] General Statutes § 52-555 provides in relevant part: "(a) In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of. . . ."

[5] The plaintiff was appointed as the administrator of the decedent's estate on May 23, 2018.

[6] The second and fourth counts, which asserted claims against Shames, were withdrawn.

[7] The plaintiff specifically alleged that, "[t]hroughout the course of [the

decedent's] treatment by the defendant, the defendant provided her numerous patient documents . . . [that] formed a contract which imposed obligations on the defendant to properly monitor her health and provide the appropriate treatment."

[8] Furthermore, it is undisputed that the June 9, 2016 notice of claim constitutes the plaintiff's sole attempt to request permission to bring an action against the defendant. The plaintiff did not seek to provide the commissioner with notice of any claims he sought to bring in his capacity as administrator of the decedent's estate at a later date.

[9] The court in *Isaac* found that, although "[t]he plaintiff alleged in the complaint that she had been appointed administratrix of the decedent's estate on May 17, 1979 . . . [i]n 1982, she discovered that she had been involved only in the transfer of survivorship property and had not been named administratrix." *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 723.

[10] The plaintiff concedes that, without the applicability of § 52-592, his claims for breach of contract and bystander emotional distress fail. Because we conclude that § 52-592 does not govern the matter before us, these claims necessarily fail. See *Parnoff* v. *Mooney*, 132 Conn. App. 512, 518, 35 A.3d 283 (2011).

_____