******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LIAM STANFORD ET AL. *v.*
# CLAYTON NOGIEC ET AL.
## (AC 47116)

Moll, Suarez and Westbrook, Js.

*Syllabus*

The plaintiffs appealed from the trial court's judgment granting the defendant rental car company's motion for summary judgment on the plaintiffs' complaint alleging, inter alia, negligent entrustment. N, whose driver's license was subject to an ignition interlock device restriction, rented a motor vehicle from the defendant and, later that same day, while driving the vehicle while under the influence of alcohol or drugs, struck the plaintiff L, a pedestrian. The plaintiffs claimed that the court improperly concluded that the defendant did not have a duty to determine whether N's driver's license was subject to restrictions before renting him a vehicle. *Held*:

The trial court properly determined that the defendant did not have a duty pursuant to the statute (§ 14-153) governing the renting of motor vehicles to use an online database to confirm whether N's license was subject to any restrictions, as the plain language and legislative history of § 14-153 indicated that the defendant was required only to inspect N's physical driver's license card to confirm that it was facially valid and unexpired.

The trial court properly granted the defendant's motion for summary judgment, as the defendant's employee who rented the motor vehicle to N submitted an affidavit in which he averred that, before renting the vehicle, he had inspected N's driver's license and confirmed that it was facially valid and unexpired, and, because the plaintiffs did not present any evidence to the contrary regarding that issue of fact in opposing summary judgment, no genuine issue of material fact existed as to whether the defendant fulfilled its duties pursuant to § 14-153.

This court concluded that, under the circumstances of this case, the defendant did not have an affirmative common-law duty to inspect N's driver's license using an online database in the absence of readily apparent facts providing a reason to suspect that a prospective renter has any limitation on his ability to drive, and, thus, no genuine issues of material fact existed and the defendant was entitled to judgment as a matter of law on the plaintiffs' negligent entrustment claims.

Argued March 26—officially released July 22, 2025

*Procedural History*

Action to recover damages for personal injuries sustained by the named plaintiff as a result of the named

defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the complaint was withdrawn as to the named defendant; thereafter, the court, *Sicilian, J.,* granted the motion for summary judgment filed by the defendant EAN Holdings, LLC, and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Michael S. Taylor,* with whom were *Brendon P. Levesque* and, on the brief, *Corinne A. Burlingham,* for the appellants (plaintiffs).

*Jenna M. Scoville,* with whom were *Scott T. Garosshen* and, on the brief, *Linda L. Morkan* and *Yelena Akim,* for the appellee (defendant EAN Holdings, LLC).

*Opinion*

WESTBROOK, J. In this personal injury action arising out of an accident involving a driver of a rental car and a pedestrian, the plaintiffs, Hope Stanford, Sarah Stanford, and Liam Stanford, individually and as next friend for his two minor children, appeal from the trial court's rendering of summary judgment in favor of the defendant EAN Holdings, LLC, also known as Enterprise Rental Car.[1] The plaintiffs claim that the court improperly concluded that the defendant did not have a duty to determine whether the driver's license of a renter of a motor vehicle was subject to restrictions before renting him a vehicle. We disagree and, accordingly, affirm the judgment of the court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The

---

[1] The plaintiffs' complaint additionally named the driver of the rental vehicle, Clayton Nogiec, as a defendant, but the action was withdrawn as to him following the plaintiffs' acceptance of his offer of compromise. Accordingly, all references to the defendant herein are to EAN Holdings, LLC, also known as Enterprise Rental Car.

defendant and CAMRAC, LLC (CAMRAC), are affiliates "engaged in the auto rental or leasing business." On August 24, 2019, Clayton Nogiec rented a motor vehicle through CAMRAC.[2] Before renting the motor vehicle to Nogiec, an employee looked at his driver's license and confirmed that it was "facially valid, contained no restrictions on its face, and was unexpired." Additionally, the employee observed that Nogiec "did not demonstrate any signs of mental or physical impairment, or any other unfitness to operate a motor vehicle." At the time that Nogiec rented the vehicle, the defendant was unaware that "[he] was prohibited from operating a vehicle that did not have an ignition interlock device[3] installed."[4] (Footnote added.) The motor vehicle rented by Nogiec, which was owned either by CAMRAC or by the defendant, did not have an ignition interlock device. Later that same day, Nogiec was driving the rental vehicle when he struck the plaintiff Liam Stanford, a pedestrian. Police officers conducted a field sobriety test, which Nogiec failed, and subsequently arrested him for operating a motor vehicle while under the influence of alcohol or drugs in violation of General Statutes § 14-227a.

On April 23, 2020, the plaintiffs commenced the present action. Their complaint sets forth the following

---

[2] The court determined that "[the defendant] has not satisfied its burden to demonstrate the absence of genuine disputes of material facts as to whether and how it was involved in or responsible for the transaction by which Nogiec rented the vehicle that he was driving when he struck Liam Stanford."

[3] "Ignition interlock device means a device installed in a motor vehicle that measures the blood alcohol content of the operator and disallows the mechanical operation of such motor vehicle until the blood alcohol content of such operator is less than twenty-five thousandths of one per cent." (Internal quotation marks omitted.) General Statutes § 14-227j (a).

[4] The record does not reflect why Nogiec's driver's license was subject to an ignition interlock device requirement, but it is undisputed that his license was subject to such requirement at the time that he rented the vehicle.

causes of action against the defendant: (1) vicarious liability, (2) negligent rental and/or entrustment, (3) loss of consortium, and (4) bystander emotional distress. The plaintiffs alleged, inter alia, that the defendant owned and rented the motor vehicle that Nogiec was driving at the time of the incident and that the "defendant knew, or should have known, that renting, leasing or providing motor vehicles to person[s], customers or drivers who have suspended licenses and/or are required to have ignition interlock devices in their vehicles was unsafe and could reasonably anticipate that such person, customer or driver could cause injury to another." The defendant filed an answer and a special defense in which it alleged that "[a] rental car owner or affiliate cannot be held vicariously liable for harm to persons or property that arises out of the use, operation or possession of a rented motor vehicle during the period of rental."

The defendant thereafter moved for summary judgment on all claims against it. It argued, inter alia, that the plaintiffs' vicarious liability claims were barred by 49 U.S.C. § 30106, commonly known as the Graves Amendment,[5] and that it was entitled to judgment as a matter of law on the remainder of the plaintiffs' claims because rental car companies do not have a duty to investigate the driver's license status, motor vehicle history, or criminal history. The plaintiffs filed an opposition to the defendant's motion for summary judgment.

---

[5] The Graves Amendment, 49 U.S.C. § 30106, provides in relevant part: "(a) An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner). . . ."

Following oral argument, the court, *Sicilian, J.*, issued a memorandum of decision in which it rendered summary judgment in favor of the defendant on all counts. In its memorandum, the court stated that the plaintiffs' claims against the defendant "fall squarely within the scope of the Graves Amendment and are preempted unless an exception to the preemption applies . . . [such as] where the lessor commits independent acts of negligence . . . . The plaintiffs' only claims of independent negligence on the part of [the defendant] are their claims that [the defendant] was negligent in renting or entrusting the subject vehicle to Nogiec. . . . If those claims fail, then the claims for vicarious liability must also fail. In short, [the defendant's] motion for summary judgment as to all counts turns on whether it is entitled to summary judgment on its claims of negligent entrustment."[6]

In addressing the plaintiffs' negligent entrustment claims, the court stated: "The plaintiffs' [negligent entrustment] claim rests on the proposition that [the defendant] had a duty to investigate the status of Nogiec's license and therefore should have known that his license was restricted. The plaintiffs' argument is inconsistent with the weight of authority holding that . . . a rental car company has no duty to do anything more than [assess] the facial validity of a renter's license and [compare] the signature on the license to that on the contract, as required by General Statutes § 14-153 . . . . The court concludes that there are no disputed issues of material fact regarding [the defendant's] lack

---

[6] The plaintiffs' claims of loss of consortium and bystander emotional distress are derivative causes of action that rise and fall with the validity of their negligent entrustment claims. See *Gilman* v. *Shames*, 189 Conn. App. 736, 747–48, 208 A.3d 1279 (2019) ("Like a loss of consortium claim, a claim for bystander emotional distress is a derivat[ive] claim. . . . Consequently, it cannot be brought as a freestanding claim where there is no valid underlying predicate action." (Citation omitted; internal quotation marks omitted.)).

of actual or constructive knowledge that Nogiec was prohibited from operating a motor vehicle without an ignition interlock device or was otherwise incompetent to operate a motor vehicle. Therefore, [the defendant] is entitled to judgment as a matter of law on the plaintiffs' claims for negligent entrustment. . . . [The defendant's] motion for summary judgment on all the counts of the plaintiffs' complaint against [the defendant] is granted." (Citations omitted; internal quotation marks omitted.) This appeal followed.

As a threshold matter, we set forth the relevant standard that governs our review of a court's decision to grant a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court

under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Belevich* v. *Renaissance I, LLC*, 207 Conn. App. 119, 124, 261 A.3d 1 (2021). "We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Adams* v. *Aircraft Spruce & Specialty Co.*, 215 Conn. App. 428, 441, 283 A.3d 42, cert. denied, 345 Conn. 970, 286 A.3d 448 (2022).

We now turn to the plaintiffs' claims on appeal. The plaintiffs claim that the court improperly concluded that the defendant did not have a duty to determine whether Nogiec's license was subject to an ignition interlock device requirement before renting him a vehicle. Specifically, the plaintiffs argue that the defendant had a duty to use an online database to confirm the status of Nogiec's license pursuant to (1) § 14-153 and/or (2) the common law. We address each argument in turn.

I

We first consider the plaintiffs' argument that the defendant "had a duty under . . . § 14-153 to inspect the validity of Nogiec's license using an online database"[7] and to confirm "that the proffered license is not suspended or otherwise limited . . . ." The defendant

---

[7] In connection with their opposition to the defendant's motion for summary judgment, the plaintiffs submitted an affidavit of Lloyd D. Rae, an expert in the automobile rental business, which provides in relevant part that the defendant had access to "commercially or publicly available services to confirm the license status of Nogiec prior to renting a motor vehicle to Nogiec including the Connecticut Department of Motor Vehicles Credential Verification website which is a free service [and/or] [the] [LexisNexis] website of which they are subscribers." The plaintiffs contend that whether such sources are available to car rental companies for the purpose of confirming the status of a driver's license is a question of fact that they would bear the burden of proving at trial.

counters that § 14-153 does not require car rental companies to search online databases to confirm the validity or status of a renter's license. Rather, the defendant contends that the statute required it only to inspect Nogiec's physical driver's license card to confirm its facial validity. We agree with the defendant that § 14-153 did not require it to search an online database or other sources to confirm the status of Nogiec's driver's license.

Whether § 14-153 imposes a duty on car rental companies to search online databases to confirm the validity or status of a prospective renter's driver's license is a question of statutory interpretation. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Meriden* v. *Freedom of Information Commission*, 338 Conn. 310, 320–21, 258 A.3d 1 (2021). "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation

marks omitted.) *Seramonte Associates, LLC* v. *Hamden*, 202 Conn. App. 467, 476, 246 A.3d 513 (2021), aff'd, 345 Conn. 76, 282 A.3d 1253 (2022).

We begin with the text of the statute. Section 14-153 provides in relevant part: "Any person, firm or corporation which rents a motor vehicle . . . *shall inspect or cause to be inspected the motor vehicle operator's license of the person initially operating such motor vehicle,* shall compare the signature on such license with that of the alleged licensee written in his presence and shall keep and retain for a period of one year a record of the name of such licensee, the number of his license and the date of issue thereof, the registration number of the motor vehicle so rented and the mileage reading displayed by the odometer of such vehicle at the time such vehicle leaves and returns to the lessor's place of business . . . ." (Emphasis added.) The relevant statutory scheme does not provide any definitions relating to the phrase "inspect . . . the motor vehicle operator's license . . . ." General Statutes § 14-153.

"In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Meriden* v. *Freedom of Information Commission,* supra, 338 Conn. 322. "Dictionaries in print at the time of the statute's enactment are the most instructive. . . . [L]ater editions also can be instructive, particularly those from the time when a statute is revised but retains the language at issue." (Citation omitted; internal quotation marks omitted.) *9 Pettipaug, LLC* v. *Planning & Zoning Commission,* 349 Conn. 268, 280, 316 A.3d 318 (2024).

The plaintiffs assert that "[w]hether [the defendant] owed a duty to determine whether Nogiec was subject to an [ignition interlock device] requirement under . . . § 14-153 centers on the meaning of the word 'inspect' in this statute." At the time of the statute's enactment, Webster's New International Dictionary of the English Language defined the term "inspect" in relevant part as "[t]o look upon; to view closely and critically . . . to examine; scrutinize [or] investigate." Webster's New International Dictionary of the English Language (4th Ed. 1931) p. 1117. When the legislature last amended the statute in 1987, the statute retained the language at issue, but the dictionary defined "inspect" as "to view closely in critical appraisal," to "look over," or "to examine officially." Webster's Ninth New Collegiate Dictionary (1986) p. 626. The parties dispute whether "inspect," as used in the statute, requires a car rental company to *look at* a prospective renter's driver's license and *examine* its facial validity or to *investigate* the validity of such license using outside sources. Because the definition at the time of enactment included "to investigate," but the definition at the time of amendment did not, the dictionary definitions reasonably could be read to support both parties' interpretations. The term "inspect" is, therefore, ambiguous because it "is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Pizzoferrato* v. *Community Renewal Team, Inc.*, 211 Conn. App. 458, 462, 272 A.3d 1145 (2022). Accordingly, we look to other parts of the statute, as well as the legislative history and circumstances surrounding the statute's enactment, for guidance.

The subject of the statute's inspection requirement is the "motor vehicle operator's license" and, therefore, we consider the term "inspect" in light of the term "license," as used in § 14-153. The plaintiffs argue that the term "license" refers to the renter's *authority* to

operate a motor vehicle and, therefore, car rental companies must confirm that a prospective renter's driver's license is valid and free from restrictions. The defendant, however, argues that the term "license," as used in the statute, merely refers to a prospective renter's *physical* driver's license card. Webster's New International Dictionary of the English Language contemporaneously defined the term "license" in relevant part as the "[a]uthority or . . . permission given to do something (specified) . . . ; also, the document embodying such permission . . . ." Webster's New International Dictionary of the English Language, supra, p. 1244. The context provided by the text of the statute, in conjunction with the foregoing definitions, suggests that the term "license" refers to the physical license "document," rather than the abstract "permission" to operate a motor vehicle.

Section 14-153 uses the term "license" three times: anyone who rents a motor vehicle "shall inspect . . . the *motor vehicle operator's license* of the person initially operating such motor vehicle, shall compare the signature on *such license* with that of the alleged licensee written in his presence and shall keep and retain . . . a record of . . . *the number of his license* and *the date of issue thereof* . . . ." (Emphasis added.) "It is a familiar principle of statutory construction that [when] the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance . . . ." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 727, 6 A.3d 763 (2010). The latter two uses of the term "license" in § 14-153 unambiguously refer to the signature, number, and issuance date on the physical driver's license card. Although the first use of the term could be read as referring to the authority to operate a motor vehicle, the statute as a whole does not present any indication that the

"legislature would have intended that the same term be given a different meaning in different parts of the statute." *Dept. of Public Safety* v. *Freedom of Information Commission*, supra, 728. This is especially true in light of the statute's use of the phrase "*such* license," which indicates that the preceding use of "license" has the same meaning. (Emphasis added.) General Statutes § 14-153; see also *Dept. of Public Safety* v. *Freedom of Information Commission*, supra, 728. Thus, the statute's inspection requirement—like the signature, number, and issuance date requirements—must also refer to the physical driver's license card presented by the prospective renter, rather than to the renter's abstract authority to operate a motor vehicle.

Turning to the legislative history of § 14-153, the plaintiffs argue that the legislature intended § 14-153 to require car rental companies to ascertain the status of a prospective renter's driver's license. In support of this argument, they point to the portion of the legislative history showing that House Bill No. 642, 1931 Sess., was originally entitled "Renting Motor Vehicle to Unlicensed Person." Conn. Joint Standing Committee Hearings, Motor Vehicles, 1931 Sess., p. 156. They additionally point to the following statement given at the Joint Standing Committee hearing on the substitute bill, entitled "An Act concerning the Renting of Motor Vehicles": "[Substitute House Bill No. 642] makes it necessary for the person or corporations renting automobiles under the so-called 'U-Drive' plan to ascertain from the lessee whether or not he is a *properly licensed* operator before allowing him to operate his car on the highway. The Committee feels that this is a safety measure for the protection of the public and therefore recommends the passage of the Bill." (Emphasis added.) Conn. Joint Standing Committee Hearings, supra, p. 190. The defendant, however, argues that "the statute was targeted at catching drivers who had no license at all . . . ." In

support of its argument, the defendant directs us to the stated purpose of House Bill No. 642, as expressed at the Joint Standing Committee Hearing on the original bill: "The purpose of the Bill is to make it possible . . . through identification to make sure that [the prospective renter] has a license . . . [and require] [t]he person who rents the vehicle to ascertain whether [the prospective renter] has a license." Conn. Joint Standing Committee Hearings, supra, p. 157.

Although the plaintiffs point to one instance in which the legislature expressed that a renter should be "properly licensed," the legislature's intended meaning of that phrase is vague because "properly" could mean a valid, unrestricted license, or it could mean that the renter obtained a license by proper means. The plaintiffs do not direct our attention to any portions of the legislative history that show that the legislature intended car rental companies to use outside sources to investigate the status of a renter's license. To the contrary, the stated purpose indicates that car rental companies need only use a prospective renter's identification to ensure that such renter has a driver's license. In light of that stated purpose, as well as our determination that the statute's use of the term "license" refers to a physical driver's license card, we are persuaded that the legislature intended the statute to require car rental companies to ascertain whether a prospective renter possesses a physical driver's license card.

The circumstances surrounding the statute's enactment further support our interpretation of the statute's text and legislative history because the use of online databases to confirm the status of a driver's license did not exist. In fact, the plaintiffs argue that § 14-153 "limits those who can rent vehicles to those who have valid driver's licenses" and, because "[a] *modern* Connecticut license may be suspended or restricted with no visible change to the physical document," the plaintiffs

argue that "confirming the validity of a license in our *modern era* includes checking the status of a [driver's] license online . . . ." (Emphasis added.)

"Our case law is clear . . . that when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent . . . ." (Internal quotation marks omitted.) *King* v. *Volvo Excavators AB*, 333 Conn. 283, 296, 215 A.3d 149 (2019); see also *Adesokan* v. *Bloomfield*, 347 Conn. 416, 439, 297 A.3d 983 (2023) ("[h]ad the legislature intended to include [certain conduct within the meaning of the statute], it could have done so"). The plaintiffs acknowledge that "[t]he relevant language of § 14-153 has been in place since at least 1931." Indeed, the legislature has amended § 14-153 numerous times, but it has not substantively changed the relevant language. See General Statutes (Cum. Supp. 1931) § 628c.[8] The plaintiffs themselves argue that the standards for determining the status of a license have changed since the statute's enactment and that the use of online databases for that purpose is a "*modern* system . . . ." (Emphasis added.) We presume, therefore, that if the legislature had intended to impose duties related to modern technological developments, it would have revised the language of the inspection requirement accordingly.[9]

---

[8] General Statutes (Cum. Supp. 1931) § 628c provides in relevant part: "Any person who shall rent a motor vehicle without a driver shall inspect or cause to be inspected the motor vehicle operator's license of the person by whom such motor vehicle is to be operated, shall compare the signature on such license with that of the alleged licensee written in his presence and shall keep a record of the name of such licensee, the number of his license and the date of issue thereof . . . ."

[9] The plaintiffs attempt to overcome our well settled law that the legislature "is presumed to know how to draft legislation"; (internal quotation marks omitted) *King* v. *Volvo Excavators AB*, supra, 333 Conn. 296; by analogizing the lack of legislative intervention in the present case with the alleged lack of legislative intervention in the practice of witch trials. Specifically, the plaintiffs, in their reply brief, state: "At one time, Connecticut drowned people, in a process known as the 'ducking test,' to determine whether they were witches possessed by evil spirits. . . . There is no clear indication that the General Assembly ever passed a law to end our state's use of the

Moreover, "[courts] are not in the business of writing statutes; that is the province of the legislature. Our role is to interpret statutes as they are written. . . . [We] cannot, by [judicial] construction, read into statutes provisions [that] are not clearly stated." (Internal quotation marks omitted.) *Aldin Associates Ltd. Partnership* v. *State*, 230 Conn. App. 223, 249, 330 A.3d 613, cert. granted, 351 Conn. 911, 330 A.3d 882 (2025); see also, e.g., *PPC Realty, LLC* v. *Hartford*, 350 Conn. 347, 358, 324 A.3d 780 (2024) (declining to graft onto statutes language that does not exist); *PJM & Associates, LC* v. *Bridgeport*, 292 Conn. 125, 138, 971 A.2d 24 (2009) ("[w]hen a court interprets [a statute], it cannot change the inherent meaning of words or supply additional terms to change the meaning of the provision at issue" (internal quotation marks omitted)); *Lucarelli* v. *State*, 16 Conn. App. 65, 70, 546 A.2d 940 (1988) (we may not "interpret [a] statute as including . . . expressions [that] would . . . alter its meaning").

The defendant argues that for this court to adopt the plaintiffs' position, we would have to read provisions

ducking test, but we can safely conclude that the good people of Connecticut came to realize—even without legislative intervention—that the test did not serve the public policy for which it originally was intended. Here, the court is confronted with two statutes that should act to protect the lives and safety of Connecticut residents . . . § 14-153 . . . and General Statutes § 14-227j . . . . If someone with a court imposed [ignition interlock device] restriction on their license can freely rent a vehicle without an [ignition interlock] device, and if the rental agent has no obligation beyond visually confirming that the lessee possesses a valid looking piece of plastic, then both statutes are undermined, and the test no longer serves the policy behind either." First, the plaintiffs' assertion that the legislature never intervened to prohibit the "ducking test" is undercut by the legislature's adoption of statutes criminalizing homicide. See General Statutes §§ 53a-54a through 53a-58. Second, any prohibition on the "ducking test" concerns a *negative* duty to refrain from drowning another person. The plaintiffs, however, ask us to read into § 14-153 an *affirmative* duty for car rental companies to investigate the status of a prospective renter's driver's license. Accordingly, we are not persuaded that the tragic history of witch trials in Connecticut is relevant to the issue of whether certain duties exist pursuant to § 14-153.

into the statute that do not exist. We agree. The language in the statute is silent as to any requirement that car rental companies use electronic tools to verify the validity or status of a prospective renter's license. The legislature has, however, expressly permitted similar verification in other statutes, which indicates that it knows how to impose such a requirement if it so intended. See, e.g., General Statutes § 30-86 (c) (1) (seller of alcohol "may perform a transaction scan[10] to check the validity of a driver's license or identity card presented by a cardholder" (footnote added)); General Statutes § 53-344 (d) (2) (seller of tobacco products "may perform a transaction scan to check the validity of a driver's license or identity card presented by a cardholder"). Additionally, the legislature knows how to instruct car rental companies to limit their services to those drivers with certain licenses. See, e.g., General Statutes § 14-227j (e) ("[n]o provision of this section shall be construed to authorize the operation of a motor vehicle by any person whose motor vehicle operator's license has been refused, suspended or revoked, or who does not hold a valid motor vehicle operator's license"). In fact, § 14-153 expressly requires car rental companies to refuse service to minors without the written consent of a parent or guardian. See General Statutes § 14-153 ("no person shall rent or lease any motor vehicle without a driver to a minor without the written consent of a parent or guardian of such minor"). The statute does not, however, expressly require car rental companies to refuse service to other types of licensed drivers, such as those with restricted licenses. To interpret the statute as including a duty to search online databases to confirm the status of a prospective renter's driver's license would alter the statute's meaning by placing additional

---

[10] General Statutes § 30-86 (a) (3) defines "transaction scan" as "the process by which a permittee or permittee's agent or employee checks, by means of a transaction scan device, the validity of a driver's license or an identity card . . . ."

burdens on car rental companies. "If the legislature had wished to" place such burdens on rental car companies, "it easily could have done so." *Lucarelli* v. *State*, supra, 16 Conn. App. 70.

Because we conclude that § 14-153 required only that the defendant inspect Nogiec's physical driver's license card to confirm its facial validity, the trial court properly determined that the defendant did not have a duty pursuant to § 14-153 to use an online database to confirm whether Nogiec's license was subject to any restrictions. In the present case, the employee who rented the motor vehicle to Nogiec submitted an affidavit in which he averred that, before renting the vehicle to Nogiec, he had inspected Nogiec's driver's license and confirmed that it was facially valid and unexpired. The plaintiffs did not present any evidence to the contrary regarding that issue of fact in opposing summary judgment. Thus, the court properly concluded that no genuine issue of material fact exists as to whether the defendant fulfilled its duties pursuant to § 14-153.

## II

We next consider the plaintiffs' argument that the common law imposed on the defendant "a duty to inspect the validity of Nogiec's license using an online database because a reasonable person under these circumstances would know that the plaintiffs' injuries were a likely result from a failure to do so." The plaintiffs argue that, "[h]ad [the defendant] exercised reasonable care in determining the status of Nogiec's license using online [Department of Motor Vehicles] records, it would have discovered the [ignition interlock device] requirement and been aware of his incompetence to drive or drive the vehicle rented to him." The defendant, however, argues that "Connecticut negligent entrustment cases do not support . . . [an] affirmative duty to investigate license status." It asserts that "[t]he

plaintiffs seek to stretch the common law" and urges this court to "decline the invitation." We conclude that, under the circumstances of this case, the defendant did not have an affirmative common-law duty to determine whether Nogiec's license was subject to an ignition interlock device restriction before renting him a motor vehicle.

The following legal principles are relevant to our resolution of this issue. "[G]eneral common-law principles . . . [provide] that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . Additionally, [a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. . . . Our law makes clear, however, that [a] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed." (Citations omitted; internal quotation marks omitted.) *Glover* v. *Bausch & Lomb, Inc.*, 343 Conn. 513, 532–33, 275 A.3d 168 (2022).

"It is a well accepted general tort principle that a person ordinarily will not be deemed liable for the actions of another that result in an injury to a third party. . . . There is no duty so to control the conduct

of a third person as to prevent him from causing physical harm to another unless [an exception applies]. . . . The tort of negligent entrustment is [an] exception to this general tort principle. The rationale underlying the imposition of negligent entrustment liability on suppliers of chattels is that one has a duty not to supply a chattel to another who is likely to misuse it in a manner causing unreasonable risk of physical harm to the entrustee or others." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Adams* v. *Aircraft Spruce & Specialty Co.*, supra, 215 Conn. App. 441–42. "[T]he elements of a cause of action sounding in negligent entrustment of an automobile are (1) the owner of an automobile entrusts it to another person (2) whom the owner knows or should reasonably know is so incompetent to operate it that injury to others should reasonably be anticipated, and (3) such incompetence results in injury." (Internal quotation marks omitted.) Id., 445.

Neither this court nor our Supreme Court has specifically addressed the question of whether a car rental company may be held liable for negligent entrustment of a motor vehicle for failing to investigate whether a renter's driver's license is subject to an ignition interlock device requirement. Nevertheless, the decisions addressing the issue of negligent entrustment in *Turner* v. *American District Telegraph & Messenger Co.*, 94 Conn. 707, 110 A. 540 (1920); *Greeley* v. *Cunningham*, 116 Conn. 515, 165 A. 678 (1933); *Shea* v. *Brown*, 146 Conn. 631, 153 A.2d 419 (1959); and *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 202 A.3d 262, cert. denied sub nom. *Remington Arms Co., LLC* v. *Soto*, U.S. , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019); are relevant to our analysis.

First, in *Turner* v. *American District Telegraph & Messenger Co.*, supra, 94 Conn. 707, "the defendant security company entrusted a loaded pistol to an

employee who later instigated a fight with and ulti-
mately shot the plaintiff . . . . [Our Supreme Court]
held that there was insufficient evidence to support a
verdict for the plaintiff on his negligent entrustment
claim because there was *not even a scintilla of evidence*
that the defendant had or [should] have had knowledge
*or even suspicion* that [its employee] possessed any of
the traits . . . attributed to him by the plaintiff, includ-
ing that he was a reckless person, liable to fall into a
passion, and unfit to be [e]ntrusted with a deadly
weapon . . . . The court then stated [that] [w]ithout
this vitally important fact . . . the plaintiff's [negligent
entrustment] claim falls to the ground . . . ." (Citation
omitted; emphasis added; internal quotation marks
omitted.) *Adams* v. *Aircraft Spruce & Specialty Co.*,
supra, 215 Conn. App. 443–44.

Next, in *Greeley* v. *Cunningham*, supra, 116 Conn.
515, our Supreme Court considered whether the owner
of a vehicle was liable for negligent entrustment when
he allowed the codefendant, an unlicensed driver, to
drive his motor vehicle under the supervision of a
licensed driver. Id., 517. The court stated: "[T]he owner
[of a motor vehicle] may be liable for injury resulting
from the operation of an automobile he loans to
another, when he knows or ought reasonably to know
that the one to whom he [entrusts] it is so incompetent
to operate it, by reason of inexperience or other cause,
that the owner ought reasonably to anticipate the likeli-
hood that in its operation injury will be done to others."
Id., 518. "While [the operator] had not received a license
to operate an automobile," the owner of the vehicle
had reason to believe she was competent to do so, and
he complied with the requirements of the applicable
statute[11] by ensuring she was supervised by a licensed

---

[11] The applicable statute in *Greeley* provided "that an unlicensed person
over sixteen years of age, who has not had a license issued to him suspended
or revoked, may operate a motor vehicle upon the highways while under
the instruction of and accompanied by a licensed operator, who shall have
full control of the vehicle." *Greeley* v. *Cunningham*, supra, 116 Conn. 521.

driver. Id., 521. The court concluded that the owner was not liable for negligent entrustment of his automobile because "[t]he statute amounts to a legislative affirmance that an unlicensed person operating an automobile under the conditions specified in the statute, is not to be deemed so incompetent that the general safety of the public requires that he be kept off the highways." Id.

Then, in *Shea* v. *Brown*, supra, 146 Conn. 631, the issue was whether car dealers could be held liable for negligent entrustment when their salesman allowed a prospective buyer with a suspended driver's license to borrow a motor vehicle for a test drive. Id., 631–32. The dealers had "made no attempt to ascertain from the salesman whether [the buyer] possessed an operator's license or was otherwise qualified to operate a motor vehicle." Id., 632. The plaintiff claimed that the dealers knew or should have known that the buyer was so incompetent to operate a motor vehicle that they "ought reasonably to anticipate the likelihood of injury to others by reason of that incompetence . . . ." (Internal quotation marks omitted.) Id. Our Supreme Court concluded that the dealers were not liable for negligent entrustment because "[t]he fact that [the buyer's] license had been suspended did not as a matter of law establish that he was an incompetent operator. To have obtained the license in the first place, he had to pass an examination to prove his competency. . . . [T]here was nothing to show that [the buyer] lacked the skill, technique or capability necessary for the operation of an automobile. In addition, [General Statutes § 14-60 (a) (1)] permits a dealer to loan a motor vehicle . . . for not more than [thirty] days for the purpose of trial of a motor vehicle." Id., 633.

Lastly, in *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 53, the issue was whether the manufacturer and sellers of a rifle were liable for

negligent entrustment when a mother purchased a rifle and thereafter gave it to her son, who used it to perpetrate a school shooting. Id., 71–72. Our Supreme Court concluded: "The rule that a cause of action for negligent entrustment will lie only when the entrustor knows or *has reason to know* that the direct entrustee is likely to use a dangerous instrumentality in an unsafe manner would bar the plaintiffs' negligent entrustment claims. Specifically, there is no allegation in this case that there was *any reason to expect* that [the] mother was likely to use the rifle in an unsafe manner." (Emphasis added.) Id., 81.

In each of these cases, the court declined to hold an entrustor liable under a negligent entrustment theory when no circumstances gave the entrustor a reason to suspect that the entrustee was likely to use the entrusted item in a way that would cause injury to others. Accordingly, our review of Connecticut's negligent entrustment case law suggests that whether a car rental company may be held liable for negligent entrustment of a motor vehicle does not depend on whether the company could have taken *affirmative steps* to learn about the renter's incompetence; rather, it depends on whether readily apparent facts gave the company a reason to suspect that the renter was incompetent to operate a motor vehicle. See id., 80 (our Supreme Court "never has suggested that a cause of action for negligent entrustment— whether involving a vehicle, a weapon, or some other dangerous item—will lie in the absence of evidence that the direct entrustee is likely to use the item unsafely"). Moreover, our case law suggests that when a statute governs a particular type of entrustment, the entrustor is not required to do more than comply with the statute unless the circumstances indicate that the entrustee is likely to use the item in a way that will injure others. Accordingly, we are persuaded that, in the absence of readily apparent facts indicating that a prospective

renter is incompetent to operate a motor vehicle, car rental companies do not have a duty to take steps beyond the requirements of § 14-153 to confirm the status of the prospective renter's driver's license.

The plaintiffs have not cited a single case in Connecticut or any other jurisdiction holding that a car rental company is obligated to verify the status of a renter's license using an online database, in the absence of any reason to suspect that the renter has any limitation on his ability to drive. In fact, the plaintiffs concede that "other jurisdictions have not found a duty for rental car agencies to assess the present status of a potential renter's driver's license using online [Department of Motor Vehicles] databases." Indeed, courts in other states that have considered this issue have uniformly held that there is no such duty or that it is the function of the legislature, not the courts, to impose such a duty. See, e.g., *Flores* v. *Enterprise Rent-A-Car Co.*, 188 Cal. App. 4th 1055, 1059, 116 Cal. Rptr. 3d 71 (2010) ("a rental car agency is not liable for negligent entrustment where the agency has fully complied with the [statutory] requirements . . . and the customer does not appear impaired or otherwise unfit to drive at the time of rental"); *Young* v. *U-Haul Co. of D.C.*, 11 A.3d 247, 250 (D.C. App. 2011) (motor vehicle rental company had no duty to inquire into competency of renter to drive motor vehicle when renter presented facially valid, unexpired driver's license and did not appear physically or mentally impaired); *Rivers* v. *Hertz Corp.*, 121 So. 3d 1078, 1080 (Fla. App. 2013) (holding that, "[a]bsent any facts to demonstrate [car rental company] had some knowledge of the deficient driver's license, there can be no duty imposed upon [it] to investigate and discover [the renter's] suspended driver's license"), review denied, 147 So. 3d 526 (Fla. 2014); *Cowan* v. *Jack*, 922 So. 2d 559, 567 (La. App. 2005) (car rental company was not liable for negligent entrustment when renter "presented a facially valid, unexpired driver's license

and . . . did not appear physically or mentally impaired at the time of the rental"), cert. denied, 926 So. 2d 544 (La. 2006); *Nunez* v. *A&M Rentals, Inc.*, 63 Mass. App. 20, 25, 822 N.E.2d 743 (2005) (rejecting claim that car rental company had duty to use online database to verify status of renter's license); *Cousin* v. *Enterprise Leasing Co.-South Central, Inc.*, 948 So. 2d 1287, 1292 (Miss. 2007) (holding that Mississippi law "only places a burden on rental car companies to accept facially valid, unexpired driver's licenses"); *Weber* v. *Budget Truck Rental, LLC*, 162 Wn. App. 5, 14, 254 P.3d 196 (motor vehicle rental company did not have duty to do more than look at face of license and confirm that it is unexpired, belongs to person presenting it, and bears no marks indicating suspension or revocation), review denied, 172 Wn. 2d 1015, 262 P.3d 64 (2011).[12] Our review of the case law in Connecticut and other jurisdictions persuades us that car rental companies do not have a duty to confirm the validity or status of a renter's driver's license using an online database in the absence of readily apparent facts providing a reason to suspect

[12] The plaintiffs argue that cases from other jurisdictions are not relevant to our analysis because they do not "directly [address] the issue of a rental to a person with an [ignition interlock device] requirement" and that most of those cases hold "that investigating the status of the operator's license, even if required, would not have been relevant, because the suspended license was not evidence that the operator was unfit to drive and thus could not form the basis of a negligent entrustment claim." Although none of the cases we cite to specifically address licenses that are subject to an ignition interlock device restriction, we disagree that these cases are not relevant to our analysis. Our review of the case law from other jurisdictions reveals that most jurisdictions have consistently held that a car rental company does not have a duty to take additional steps to ascertain the competence of the renter or the validity of their license, provided (1) a car rental company complies with its state's statutory requirements for renting a motor vehicle; (2) the renter presents a facially valid and unexpired license; and (3) the renter, at the time of the rental, did not display any signs of mental or physical unfitness to operate a motor vehicle. See, e.g., *Cowan* v. *Jack*, supra, 922 So. 2d 567. We see no reason why this case law is not relevant to all limitations or restrictions on a license, including an ignition interlock device requirement.

that a prospective renter has any limitation on his ability to drive.[13]

In the present case, the employee who rented the motor vehicle to Nogiec averred that he had inspected Nogiec's driver's license card and confirmed that it was facially valid and was unexpired and that Nogiec had not demonstrated any signs of mental or physical impairment or any other unfitness to operate a motor vehicle. As we have previously indicated, and as noted by the trial court, the plaintiffs presented no contradictory evidence in opposing the motion for summary judgment that raised a genuine issue of material fact as to whether the defendant had reason to know that Nogiec's license was subject to an ignition interlock device requirement or that he was otherwise incompetent to operate a motor vehicle. Additionally, as discussed in part I of this opinion, the defendant complied with the inspection requirement of § 14-153. Accordingly, the trial court properly concluded that no genuine issues of material fact existed and that the defendant was entitled to judgment as a matter of law on the plaintiffs' negligent entrustment claims.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] We note that every Superior Court decision that has considered the issue of whether § 14-153 imposes a duty to inspect renters' driving histories or criminal records has reached a similar conclusion, namely, that car rental companies need only inspect the facial validity of renters' physical driver's license cards. See, e.g., *Flaherty* v. *Sood*, Docket No. CV-20-6047916-S, 2020 WL 8455466, *7 (Conn. Super. December 7, 2020) ("[c]ase law . . . concludes [that] car rental companies presented with a facially valid driver's license have no duty to investigate the driver's competence or driving history"); *Wells* v. *Hertz Corp.*, Docket No. CV-18-6080391-S, 2019 WL 5172239, *5 (Conn. Super. September 17, 2019) ("a rental car company is under a duty to check the prospective renter's driver's license to ensure that it is facially valid"); *Chapman* v. *Herren*, Docket No. CV-07-5005067, 2010 WL 2927377, *7 (Conn. Super. June 24, 2010) ("a rental car company is not required to investigate a potential renter's driving record; rather, the rental car company must only assess the facial validity of a driver's license before renting to that driver").